IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

TRACY LAND DAVIS                                                    PLAINTIFF

     v.                    Civil No.   1:13-CV-01092

NURSE BRIAN WEST;
CAPTAIN MITCHAM; and
LIEUTENANT FAULKNER                                              DEFENDANTS


**MEMORANDUM OPINION**

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis.*  The case is before me pursuant to the consent of the parties (ECF No. 16).

Plaintiff is currently incarcerated in the Arkansas Department of Correction, East Arkansas Regional Unit.  At the times relevant to this case, Plaintiff was incarcerated in the Union County Detention Center (UCDC) in El Dorado, Arkansas.  While at the UCDC, Plaintiff maintains his constitutional rights were violated in the following ways: (1) he was denied adequate medical care; and (2) he was discriminated against because of his race.

Currently pending is a Summary Judgment Motion (ECF No. 18) filed by the Defendants.  Plaintiff has responded (ECF No. 23) to the Motion.  The Motion is now ready for decision.

**1.  FACTS**

Plaintiff was incarcerated at the UCDC from November 8, 2013, until November 22, 2013.[1]

---

[1] In discovery requests, Plaintiff referred to a second period of incarceration in January of 2014.  See e.g., ECF No. 23 at 32.  This period of incarceration is not at issue in this case.

ECF No. 23 at 14 & 16.  He was transferred to the UCDC from the Arkansas Department of Correction (ADC) for a court appearance.  Id. at 14.  Plaintiff suffers from chronic back pain.  As part of his pain management regimen, he was prescribed both Ibuprofen and Tramadol.  ECF No. 23 at 3.

Plaintiff brought with him from the ADC the prescription medications that he was currently taking.  The jail medical form listed the following prescription medications: Ibuprofen 800 mg. tablets; Losartan Potassium 100 mg. tablets; Hydrochlorothiazide 25 mg. tablets; Omerrazole 20 mg delayed release capsules; and Doxazosin Mesylate 4 mg.  Id. at 15.  While not listed on the medical form, Plaintiff also had a prescription for, and brought with him, Tramadol 50 mg.

An officer prepared a medication administration record (MAR) for the medications except for Tramadol.  Defts' Ex. A at ¶ 7.  From November 8, 2013, to November 11, 2013, the MAR called for the Plaintiff to receive all medications except the Tramadol.  Defts' Ex. B at 1.

Plaintiff was advised that jail policy prohibited inmates from receiving controlled substances except in rare circumstances.  Plaintiff was told that he would not be receiving Tramadol because it is a controlled substance.  Plaintiff maintains the discontinuation of the Tramadol resulted in him suffering excruciating pain.  ECF No. 23 at 5.

Nurse West is a registered nurse employed at the UCDC.  Defts' Ex. A at ¶ 2.  According to Nurse West, County policy was that "controlled substances were not to be issued to inmates."  Id. at ¶ 3.  Exceptions were made when "physician contractors" for the UCDC "deemed it reasonably necessary to issue controlled substances, usually for situations such as drug detoxification/withdrawal management or treatment of acute, surgical conditions."  Id. at ¶ 4.  Nurse West indicates that "[e]xcept for emergent conditions, when an inmate at the [UCDC] has a medical

-2-

need they want addressed, they must fill out a formal request so that it can be reviewed by the contract physicians who visit the jail weekly." Id. at ¶ 14.

Nurse West, who had been off from the 8th to the 10th, returned to work on November 11, 2013. Id. at ¶ 8. Nurse West prepared a new MAR for the Plaintiff with times of administration that better benefitted the logistical needs of the facility. Id. at ¶ 9; Defts' Ex B at 2. However, according to Nurse West, he did not alter the times of the administration of Plaintiff's Ibuprofen "so as to not further alter his pain relief regimen." Defts' Ex. A at ¶ 9. Nurse West did not order the Tramadol to be distributed because of jail policy and merely secured it so that it would be transported back to the ADC with the Plaintiff. Id. at ¶ 10.

According to Nurse West, the "mainstay treatment" for chronic back pain "is to administer prescription strength non-steroidal anti-inflammatory drugs such as Ibuprofen or naproxen." Id. at ¶ 12. Throughout his incarceration, Plaintiff received Ibuprofen three times a day. Id. at ¶ 13. Nurse West asserts that Plaintiff did not request a substitute medication or a visit with a physician. Id. Nurse West indicates he had no reason to believe the Plaintiff was not receiving adequate medication. Id. at ¶ 17.

Plaintiff did file two grievances, one dated November 18, 2013, and one dated November 19, 2013, about not receiving the Tramadol. Defts' Exs. C & D. He complained about not receiving the Tramadol despite it having been prescribed for him. Id. Plaintiff stated he had been in extreme pain since being moved to the UCDC. Id. Nurse West responded to the grievance by stating: " We do not issue controlled substances (tramadol) at the UCSO." Defts' Ex. C. In response to the November 19th grievance, Plaintiff was again told they did not issue controlled substances at the UCSO. Defts' Ex. D. He was also told that Tramadol was a controlled substance in Arkansas and

that the jail did not follow ADC policies.  Id.

The Plaintiff is Black.  He indicates he witnessed a White inmate receive Tramadol.  Plaintiff believes the decision to not dispense Tramadol to him was racially motivated.  Regardless of his race, Nurse West states Plaintiff would not have received Tramadol.  Id. at ¶ 18.

Nurse West agrees that another inmate received Tramadol for a short period of time.  Defts' Ex. A at ¶ 16.  The Tramadol was prescribed by a UCDC physician contractor.  Id.  However, Nurse West states this was an infrequent and valid exception to the normal policy and that it would violate Health Insurance Portability and Accountability Act (HIPPA) if he disclosed any further details.  Id.

## 2.  APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing, Metge v. Baehler, 762 F.2d 621,

625 (8th Cir. 1985)).

### 3.  DISCUSSION

Defendants maintain they are entitled to summary judgment for the following reasons: (1) no official capacity claim has been stated because the complaint fails to allege the existence of a policy or custom of Union County that was the moving force behind any alleged constitutional violations; (2) the denial of medical care claim fails because it amounts to little more than a disagreement with a treatment decision; (3) there is no basis on which to hold the non-medical Defendants Mitcham and Faulkner liable; and (4) race did not play any factor in the decision not to administer Tramadol to the Plaintiff.

### (A).  Denial of Medical Care

"Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." Crooks v. Nix, 872 F.2d 800, 804 (8th Cir. 1989)(citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)).  The Eighth Amendment deliberate indifference standard applies to all denial of medical care claims. Carpenter v. Gage, 686 F.3d 644, 650 (8th Cir. 2012).  The deliberate indifference standard has both an objective and a subjective component. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997).  A plaintiff must demonstrate that (1) he suffered an objectively serious medical need; and (2) the defendant actually knew of the medical need but, subjectively, was deliberately indifferent to it. Grayson v. Ross, 454 F.3d 802, 808-09 (8th Cir. 2006).

No argument has been made that Plaintiff is not suffering from an objectively serious medical need. Jones v. Minnesota Dep't of Corrections, 512 F.3d 478, 481 (8th Cir. 2008)("An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or

is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.")(internal quotation marks and citation omitted). Thus, the focus in on the second element. "In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." Thompson v. King, 730 F.3d 742, 746-47 (8th Cir. 2013)(internal quotation marks and citation omitted).

This standard is not met by the exercise of professional judgment in refusing to implement an inmate's requested course of treatment. Vaughn v. Gray, 557 F.3d 904, 908-09 (8th Cir. 2009). Nor is the standard met by demonstrating a doctor committed medical malpractice. Jackson v. Buckman, 756 F.3d 1060, 1065-66 (8th Cir. 2014). To constitute deliberate indifference, "[a]n inmate must demonstrate that a prison doctor's actions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Id. Intentionally denying or delaying access to medical care may constitute deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997).

In this case, Plaintiff was booked into the detention center on a Friday. He was automatically denied Tramodol by the booking officer based on the jail policy of not providing controlled substances. There was no exercise of professional judgment involved. On the following Monday, without seeing the Plaintiff or reviewing his medical records, Nurse West, pursuant to jail policy, continued to withhold the Tramadol despite the fact that Plaintiff had current prescriptions for both Ibuprofen and Tramadol. No exercise of professional judgment was involved. There is a question of material fact as to whether this intentional deprivation of a current prescription medication, authorized by an ADC doctor, constitutes deliberate indifference. Crooks, 872 F.2d at 803 (A

factual dispute exists over the defendants' alleged refusal to provide adequate or proper pain medication to the plaintiff.   There is no affidavit filed by any physician or medical director which contradicts plaintiff's need for pain medication); Strahan v. Rottnek, No. 4:13-cv-448, 2015 WL 249448, *5 (E.D. Mo. Jan. 20, 2015)(Doctor had a policy of substituting narcotic pain medication with over-the-counter medication and then applying a stepwise approach to pain medication. "Because Dr. Rottnek's policy was applied to plaintiff without any medical determination regarding plaintiff's medical need for narcotic prescription medication for his chronic pain, the policy had the effect of denying plaintiff medical treatment"); Estate of Clutters v. Sexton, No. 1:05-CV-223, 2007 WL 3244437, *10 (S.D. Ohio Nov. 2, 2007)(Policy prohibiting all narcotics results in a denial of medical care where there is no individual determination of the prisoner's medical need for the narcotic prescription); cf. Prosser v. Nagaldinne, 927 F. Supp. 2d 708 (E.D. Mo. 2013)(no deliberate indifference when physician determined inmate no longer had a need for pain medication).

I also believe there is a question of fact as to whether the policy is unconstitutional. "Official-capacity liability under 42 U.S.C. § 1983 occurs when a constitutional injury is caused by a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."   Turner v. Mull, 784 F.3d 485, 489 (8th Cir. 2015)(internal quotation marks and citation omitted).   Plaintiff may prevail on his official-capacity claims by identifying a policy that constitutes . . . deliberate indifference."   Id.   I believe there is a genuine issue of fact as to whether the policy in question evidences deliberate indifference to the serious medical needs of the Plaintiff.

Plaintiff also names as Defendants Lieutenant Faulkner and Captain Mitcham, non-medical professionals, whose only involvement appears to be the review of grievances the Plaintiff filed.

Defts' Ex. C.  It is well settled that a public official may not be held liable under § 1983 on a *respondeat superior* theory.  <u>Choate v. Lockhart</u>, 7 F.3d 1370, 1376 (8th Cir. 1983).  A "warden or other prison director, lacking professional medical expertise, would not be liable on agency principles for any constitutional wrong."  <u>Crooks v. Nix</u>, 872 F.2d 800, 803 (8th Cir. 1989).  Those involved only in the review of grievances have no personal involvement in the medical diagnoses or treatment decisions.

"If a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing the prisoner is in capable hands. . . . [A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."  <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 (3d Cir. 2004)(parenthetical omitted).  Plaintiff's denial of medical care claims against Lieutenant Faulkner and Captain Mitcham appear to be based solely on the fact that they forwarded his grievances, about not receiving his narcotic pain medication, to Nurse West.  Plaintiff has not alleged any facts showing personal involvement of these Defendants.  The denial of medical care claims against these non-medical care provider Defendants will be dismissed.

### (B).  Discrimination

As discussed above, Plaintiff also maintains he was being discriminated against because of his race.  In support, he points to a single White inmate who he discovered was receiving Tramadol.  Nurse West has, by affidavit, stated that the medical condition of the other inmate resulted in an exception to the policy of only providing non-narcotic pain medication.  Nothing in the summary judgment record contradicts this.

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539, 556 (1974)(citation omitted). Only *deliberate* discrimination is actionable under the Equal Protection Clause. Personnel Administrator v. Feeney, 442 U.S. 256, 273 (1979); Washington v. Davis, 426 U.S. 229, 239- 48 (1976). Thus, a claim of racial discrimination under the Equal Protection Clause requires a showing of discriminatory intent. Washington, 426 U.S. at 239-40.

Here, there is no genuine issue of fact as to whether any of the named Defendants intentionally discriminated against the Plaintiff because he is Black. There is no indication at all that the fact that the Plaintiff is Black had any impact or effect on the Defendants' actions. In short, there is nothing from which an inference of discrimination can be drawn. Defendants are entitled to summary judgment on this claim.

### (4).  CONCLUSION

For the reasons stated, by separate order, the Defendants' Motion for Summary Judgment (ECF No. 18) will be **GRANTED IN PART AND DENIED IN PART.**  Specifically, the Motion will be  **GRANTED** as to all claims against Lieutenant Faulkner and Captain Mitcham and as to the discrimination claim.  The Motion will be **DENIED** as to the denial of medical care claim against Nurse Brian West.

**DATED** this **27th day of August 2015.**


/s/ Barry A. Bryant
  HON. BARRY A. BRYANT
  UNITED STATES MAGISTRATE JUDGE

-9-