IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

**TRACY LAND DAVIS**                                                                                    **PLAINTIFF**

v.                                      Civil No.   1:13-CV-01092

**NURSE BRIAN WEST**                                                                               **DEFENDANTS**

## MEMORANDUM OPINION

This is a civil rights action filed by Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.  The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings.  ECF No. 16.  Pursuant to this authority, I held a bench trial on February 24, 2016 and now issue the following findings of fact and conclusions of law.

1. **BACKGROUND**

Plaintiff, was transferred from the Arkansas Department of Correction ("ADC") to the Union County Detention Center ("UCDC") for a court appearance on November 8, 2013.  The events at issue here occurred while Plaintiff was incarcerated at the UCDC.  ECF No. 23.  Plaintiff alleged in his Complaint that his constitutional rights were violated when Defendant West refused to allow Plaintiff to continue taking one of his pain medications – Tramadol - prescribed by an ADC physician.[1]  Defendant asserted that he was following the policy of the UCDC which prohibited dispensing any narcotics to inmates.

---

[1] Plaintiff's claims against Lieutenant Faulkner and Captain Mitcham for race discrimination were previously dismissed leaving only his claim for denial of medical care for trial.  ECF. No.  26.

1

At the bench trial, the testimony of the following witnesses was heard: (1) Plaintiff Tracy Land Davis; (2) Captain Richard Mitchum; (3) Lisa Worley; (4) Defendant Brian West; and (5) Mike McGough.

Plaintiff offered Exhibits A – Q, including: (A) Affidavit of Brian West dated November 17, 2014; (B) Defendants' Response to Plaintiff's First Set of Interrogatories to Defendants; (C) Defendant's Response to Plaintiff's Second Set of Interrogatories to Defendants; (D) Defendants' Response to Plaintiff's First Request for Admission; (E) Union County Detention Center Inmate rules and Regulations; (F) Page Number (88) from the Jail Division; (G) A Second Union County Detention Center Inmate Rules and Regulations; (H) Union County Sheriff Intake Sheet dated November 8, 2013; (I) Union County Sheriff Intake Medical Form dated November 8, 2013; (J) Union County Sheriff Release Sheet dated November 22, 2013; (K) Plaintiff's List of Medications; (L) Grievance dated November 18, 2013; (M) Grievance dated November 19, 2013; (N) Newspaper Article; (O) Declaration in Opposition to Defendant's Motion for Summary Judgment; (P) Affidavit of Plaintiff Tracy Land Davis dated December 30, 2014; and (Q) Ouachita Valley Family Clinic Patient Plan dated September 9, 2013. Exhibits A – M and Exhibit Q were all admitted without objection. Defendant objected to Exhibits N, O and P. Exhibit N was admitted as a matter of public record. Exhibits O and P were excluded because Plaintiff could testify in person.

Defendant offered Exhibits 1 – 5, including: (1) Plaintiff's Book-in Sheet from November 8 – 22, 2013; (2) Inmate Medical Form dated November 8, 2013; (3) Grievance or Appeal Form with Response by Defendant dated November 18, 2013 and November 19, 2013; (4) Medical Administration Record from November 9 - November 11, 2013; and (5) Medical Administration Record from November 13 – 21, 2013. Defendant's Exhibits 1 – 5 were admitted without objection.

## 2. <u>FINDINGS OF FACT</u>

The following is a summary of witnesses' testimony and my findings of fact:

**Plaintiff Tracy Land Davis**

When Plaintiff was transported to the UCDC from the ADC on November 8, 2013 he brought with him the prescription medications he was currently taking. The UCDC jail medical form listed the following prescription medications: Ibuprofen 800 mg. tablets; Losartan Potassium 100 mg. tablets; Hydrochlorothiazide 25 mg. tablets; Omerrazole 20 mg delayed release capsules; and Doxazosin Mesylate 4 mg. While not listed on the medical form, Plaintiff also had a prescription for Tramadol 50 mg which he brought with him to the UCDC. Plaintiff suffered with a variety of medical conditions including chronic lower back pain for which Tramadol was prescribed.

An officer prepared a medication administration record ("MAR") for Plaintiff's medications except for Tramadol. From November 8, 2013, to November 11, 2013, the MAR called for Plaintiff to receive all medications except Tramadol.

Plaintiff was advised jail policy prohibited inmates from receiving controlled substances/narcotics except in rare circumstances. Plaintiff was told he would not be receiving Tramadol because it is a narcotic. Plaintiff testified that the discontinuation of Tramadol resulted in him suffering excruciating pain. The Plaintiff is black. He indicated he witnessed a white inmate receive Tramadol at the UCDC.

Plaintiff filed two grievances, one dated November 18, 2013, and one dated November 19, 2013, complaining he had not been given Tramadol for his back pain even though it had been prescribed for him. Plaintiff stated he had to sleep on the floor and was in extreme pain while incarcerated at the UCDC. Plaintiff testified that once he returned to ADC he started getting Tramadol again and his pain decreased.

I found Plaintiff to be credible. However, when questioned him about the pain he suffered as a result of not receiving Tramadol he did not go into detail. He just stated he was in excruciating pain during the two weeks he was in the UCDC.

**Captain Richard Mitchum**

Captain Mitchum is currently the jail administrator at Union County and was serving in that capacity during the Plaintiff's incarceration at the UCDC. He does not remember any specific conversation he may have had with Plaintiff about any concerns relating to Plaintiff's lack of prescribed medication. He stated if he had such a conversation he would have referred Plaintiff to the medical staff. Captain Mitchum testified that the rationale behind UCDC's policy against dispensing narcotics to inmates was to prevent inmates from dealing drugs. He stated that a drug such as Tramadol would not be given by the jail even if prescribed unless it was an exceptional case. However, he made clear that the jail would supply an alternative form of pain medication. He admitted that inmates do not have anything in writing concerning the non-narcotic policy. He believes it is the medical staff that instructs inmates on this policy.

I found Captain Mitchum to be credible.

**Lisa Worley**

On the date Plaintiff arrived at the UCDC, Lisa Worley was the intake officer who signed off on Plaintiff's Inmate Medical Form. She does not remember having a conversation with Plaintiff. She testified she has no knowledge as to why Tramadol was not listed on Plaintiff's intake report if he had the prescription with him. She indicated that if Tramadol was not listed she would not have received the medication.

I found this witness to be credible.

**Defendant Brian West**

Nurse West is a registered nurse employed at the UCDC. According to Nurse West, County policy was that narcotics were not to be issued to inmates. Exceptions were made only when physician contractors for the UCDC deemed it reasonably necessary to issue controlled substances, usually for situations such as drug detoxification/withdrawal management or treatment of acute, surgical conditions. Nurse West indicated that except for emergent conditions, when an inmate at the UCDC has a medical need they want addressed, they must fill out a formal request so that it can be reviewed by the contract physicians who visit the jail weekly.

Nurse West, who had been off from the 8th to the 10th, returned to work on November 11, 2013. Nurse West prepared a new MAR for Plaintiff with times of administration that better benefitted the logistical needs of the facility. However, according to Nurse West, he did not alter the times of the administration of Plaintiff's Ibuprofen so as to not further alter his pain relief regimen. Nurse West did not order Tramadol to be distributed because of jail policy and merely secured it so that it would be transported back to the ADC with Plaintiff.

According to Nurse West, the mainstay treatment for chronic back pain is to administer prescription strength non-steroidal anti-inflammatory drugs such as Ibuprofen or naproxen. Throughout his incarceration at the UCDC, Plaintiff received Ibuprofen three times a day. Nurse West acknowledged that Plaintiff did file two grievances about not receiving Tramadol. Nurse West responded to the grievances by stating they did not issue controlled substances such as Tramadol at the UCDC and the jail did not follow ADC policies.

Nurse West agreed another inmate received Tramadol for a short period of time while Plaintiff was incarcerated at the UCDC. However, Nurse West stated that Tramadol had been prescribed by a UCDC physician contractor for this particular inmate with a severe medical

condition. Finally, Nurse West testified that he observed Plaintiff moving about the facility without difficulty and did not appear to be in "obvious pain".

I found Defendant Nurse West to be credible and will rely on his testimony accordingly.

**Mike McGough**

Mr. McGough is the Sheriff of Union County and for all times relevant to this action was acting in that capacity. He testified as to why the UCDC has a policy against dispensing controlled substances to inmates. He stated the facility had experienced problems with inmates dealing drugs and a jail nurse who fraudulently ordered medications for the inmates.

I found Sheriff McGough to be credible.

### 3. CONCLUSIONS OF LAW

   A. Denial of Medical Care

"Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." Crooks v. Nix, 872 F.2d 800, 804 (8th Cir. 1989) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)). The Eighth Amendment deliberate indifference standard applies to all denial of medical care claims. Carpenter v. Gage, 686 F.3d 644, 650 (8th Cir. 2012). The deliberate indifference standard has both an objective and a subjective component. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997). A plaintiff must demonstrate that (1) he suffered an objectively serious medical need; and (2) the defendant actually knew of the medical need but, subjectively, was deliberately indifferent to it. Grayson v. Ross, 454 F.3d 802, 808-09 (8th Cir. 2006).

No argument has been made that Plaintiff is not suffering from an objectively serious medical need. Jones v. Minnesota Dep't of Corrections, 512 F.3d 478, 481 (8th Cir. 2008)("An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's

attention.")(internal quotation marks and citation omitted). Thus, the focus is on the second element. "In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." Thompson v. King, 730 F.3d 742, 746-47 (8th Cir. 2013)(internal quotation marks and citation omitted).

This standard is not met by the exercise of professional judgment in refusing to implement an inmate's requested course of treatment. Vaughn v. Gray, 557 F.3d 904, 908-09 (8th Cir. 2009). Nor is the standard met by demonstrating a doctor committed medical malpractice. Jackson v. Buckman, 756 F.3d 1060, 1065-66 (8th Cir. 2014). To constitute deliberate indifference, "[a]n inmate must demonstrate that a prison doctor's actions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Id. Intentionally denying or delaying access to medical care may constitute deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997).

In this case, Plaintiff was booked into UCDC on a Friday. He was automatically denied Tramadol by the booking officer based on the jail policy of not providing controlled substances. There was no exercise of professional judgment involved. The question then is whether this intentional deprivation of a current prescription medication, authorized by an ADC doctor, constitutes deliberate indifference.

"Official-capacity liability under 42 U.S.C. § 1983 occurs when a constitutional injury is caused by a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Turner v. Mull, 784 F.3d 485, 489 (8th Cir. 2015)(internal quotation marks and citation omitted). Plaintiff may prevail on his official-capacity claims by identifying a policy that constitutes . . . deliberate indifference." Id. See generally, Strahan v. Rottnek, No. 4:13-cv-448, 2015 WL 249448, *5 (E.D. Mo. Jan. 20, 2015)

7

(Doctor had a policy of substituting narcotic pain medication with over-the-counter medication and then applying a stepwise approach to pain medication. "Because Dr. Rottnek's policy was applied to plaintiff without any medical determination regarding plaintiff's medical need for narcotic prescription medication for his chronic pain, the policy had the effect of denying plaintiff medical treatment"); Estate of Clutters v. Sexton, No. 1:05-CV-223, 2007 WL 3244437, *10 (S.D. Ohio Nov. 2, 2007) (Policy prohibiting all narcotics results in a denial of medical care where there is no individual determination of the prisoner's medical need for the narcotic prescription); cf. Prosser v. Nagaldinne, 927 F. Supp. 2d 708 (E.D. Mo. 2013)(no deliberate indifference when physician determined inmate no longer had a need for pain medication).

    Plaintiff was booked into UCDC on a Friday and on the following Monday, without seeing Plaintiff or reviewing his medical records, Nurse West, pursuant to jail policy, continued to withhold Tramadol during Plaintiff's incarceration despite the fact Plaintiff had a current prescription for Tramadol.  It is clear from the record Plaintiff was not evaluated by any medical professional at the UCDC to determine the extent of his chronic back pain. Plaintiff's denial of adequate medical care was a direct result of the official policy in question.  The UCDC policy of no narcotic prescription medication cannot be implemented in a blanket fashion, with instances of "exceptions" in undefined circumstances.  Rather, there must be evaluation of an inmate's medical needs by a medical professional prior to the decision to not administer previously prescribed medication.  This was not done in regards to the Plaintiff and the application of the UCDC policy resulted in deliberate indifference to the serious medical needs of the Plaintiff.

    B.  Damages

Compensatory damages under § 1983 are governed by general tort-law compensation theory.  See Carey v. Piphus, 435 U.S. 247, 255 (1978).  The law generally provides that damages may be awarded for injuries such as physical pain, mental anguish and suffering, personal

humiliation, and monetary losses. Memphis Community School Dist. v. Stachura, 477 U.S. 299, 307 (1986)(citations omitted); Jackson v. Crews, 873 F.2d 1105, 1109 (8th Cir. 1989)(compensatory damages include personal humiliation and mental anguish and suffering). However, damages may not be awarded for the abstract or subjective value of the constitutional right at issue. See Stachura, 477 U.S. at 308; *Carey*, 435 U.S. at 248.

The Court finds Plaintiff has established that he suffered some pain as a result of being denied adequate medical care. This denial of medical care was the result of an official policy of the County. However, Plaintiff presented no testimony that the injury limited him in his activities of daily living.[2] So while the injury was significant enough to cause him pain, it was not significant enough to cause Plaintiff to be unable to eat, sleep, or otherwise go about his daily activities. Further, Plaintiff indicated that once he was returned to the ADC and resumed taking the prescribed medication his pain subsided and he suffered no long term injury.

The award of damages in cases in which it has been found that defendants exhibited deliberate indifference to the serious medical needs of the plaintiff vary greatly. See e.g., Coleman v. Rahija, 114 F.3d 778 (8th Cir. 1997)($1,000 compensatory damage award for two hours of pain and suffering caused by delay in taking the plaintiff who was in labor to the hospital); Warren v. Fanning, 950 F.2d 1370, 1374 (8th Cir. 1991)(No compensatory damages awarded despite delay of a year in referring plaintiff to an outside specialist for complaints of pain and infection of the toes of his left foot and pain in his right ankle); Thompkins v. Belt, 828 F.2d 298, 301 (5th Cir. 1987)(upholding an award of $4,500 for three and a half months during which the Plaintiff was found to have suffered pain and discomfort caused by lack of proper medical treatment for back injury); Jerrell v. Bradley, 2011 WL 2182750 (W.D. Ark. June 6, 2011)(compensatory damages

---

[2] Nurse West testified at trial that he observed Plaintiff moving about the facility without difficulty and he did not appear to be in obvious pain.

on a $100 per day basis for dental pain suffered for a period of one-hundred-forty-seven days); Cameron v. Myers, 569 F. Supp. 2d 762, 765 (N.D. Ind. 2008)(award of $250,350 in compensatory damages was warranted where prison doctor failed to provide proper care for Crohn's disease as well as the newly formed pyoderma gangrenosum (skin condition causing the tissue to become necrotic and causing deep ulcers usually on his legs)). Cf. Trobaugh v. Hall, 176 F.3d 1087, 1088 (8th Cir. 1999)(remanding for an award of damages in the vicinity of $100 per day for each day in administrative segregation).

Having carefully considered Plaintiff's testimony and the exhibits, I conclude the appropriate method of awarding compensatory damages in this case is on a per-day basis. Plaintiff will be awarded damages in the amount of $25 for each of the 14 days during which he was denied medical treatment by the UCDC.[3] The total award of compensatory damages will be the sum of $350. The conduct of Defendant does not warrant the award of punitive damages.

4.  **CONCLUSION**

For the reasons stated, Plaintiff will be awarded a judgment in the amount of $350.00 in compensatory damages against Defendant Nurse West in his official capacity only. Costs in the amount of the filing fee, $350.00, are also awarded Plaintiff. A separate judgment in accordance with this opinion will be entered.

**DATED this 17th day of March 2016.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

---

[3] Plaintiff admits he received prescription strength ibuprofen during his incarceration, November 8-22, 2013, at the UCDC. Ibuprofen has pain control properties according to Nurse West. Accordingly Plaintiff's pain was not wholly untreated. Accordingly, a relatively modest award of compensatory damages for pain is appropriate.